IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONICA FLOYD-BREWER | )<br>)<br>) |
| Petitioner, | ) |
| v. | ) 13 C 5150 |
| SHERYL THOMPSON, | )<br>) Judge Virginia M. Kendall |
| Respondent. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

Petitioner Monica Floyd-Brewer filed a petition for writ of habeas corpus on July 18, 2013. Incarcerated at Logan Correctional Center in Lincoln, Illinois, Floyd-Brewer is serving a fifty-five year sentence for first-degree murder. Floyd-Brewer makes eight claims in her petition: (1) the use of an inculpatory statement made during an illegal arrest denied her a fair trial; (2) she did not receive a prompt judicial determination on probable cause; (3) interviews conducted during her illegal arrest and without counsel violated her right to counsel; (4) the state court erred in its attenuation analysis, which allowed the use of an inculpatory statement made during an illegal arrest; (5) she did not receive a fair trial or due process because the Chicago Police Department refused to produce certain files; (6) the state withheld information concerning whether one of the police officers who interrogated Floyd-Brewer was corrupt; (7) appellate counsel's failure to raise the violation of Floyd-Brewer's right to counsel on appeal rendered counsel ineffective; and (8) actual innocence. The Respondent moves to dismiss Floyd-Brewer's claims as untimely. This Court grants the Respondent's motion because Floyd-Brewer did not file her petition within one year of the date of expiration of the time for seeking direct review.

1

## FACTS

A jury convicted Floyd-Brewer of first-degree murder in 2002.[1] (Ex. A to Dkt. No. 12 at 1.) The trial court sentenced Floyd-Brewer to fifty-five years in prison on November 7, 2002. (*Id.*) Floyd-Brewer had custody of her ex-boyfriend's eight-year old son, Cedric. (*Id.* at 2.) On May 8, 1999, Floyd-Brewer left Cedric at home alone for about ninety minutes while she went to dinner with her boyfriend Bruce Triplet. (*Id.*) When Floyd-Brewer and Triplett returned to Floyd-Brewer's apartment, Cedric was lying on a bed watching television. (*Id.*) After scolding Cedric for staying up past his bedtime, Triplett left the bedroom where Floyd-Brewer and Cedric remained. (*Id.*) While in the room with Cedric, Floyd-Brewer shot Cedric in the head. (*Id.* at 3.) Cedric was admitted to the hospital at 12:45 a.m. on May 9, 1999, and died the next day. (*Id.* at 6, 17.)

Detectives arrived at the hospital and either asked or told Floyd-Brewer to accompany them to the police station. (*Id.* at 6.) Floyd-Brewer claims that she wanted to stay at the hospital with Cedric but went to the police station. (*Id.* at 7.) Floyd-Brewer arrived at the police station around 1:30 a.m. on May 9, 1999. (*Id.* at 21.) At the police station, Floyd-Brewer signed a consent to search form authorizing the police to enter and search her apartment. (*Id.* at 9-10.) This was at approximately 2:30 a.m. on May 9, 1999. (*Id.* at 10.) An attorney named Jason Rubens arrived around 3 a.m. to speak with Floyd-Brewer. (*Id.* at 21.) Rubens claims that Floyd-Brewer repeatedly asked to return to the hospital to see Cedric and that detectives would not let her leave until Floyd-Brewer made a statement. (*Id.* at 11.) With Rubens present, Floyd-Brewer

---

[1] This Court presumes the facts established by the state court are true unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254; *Virsnieks v. Smith*, 521 F.3d 707, 713 (7th Cir. 2008).

gave a statement but detectives did not let her leave afterwards. (*Id.* at 11-12.) At this point, according to the Appellate Court of Illinois, Floyd-Brewer was under illegal arrest. (*Id.* at 22.)

Floyd-Brewer claims that Rubens told her not to answer any more questions or to speak with anyone until her family arranged for a criminal defense attorney to represent her. (*Id.*) But, after reading the *Miranda* warning to her, Assistant State's Attorney Andrew Dalkin interviewed Floyd-Brewer on May 10, 1999 at about 3:50 a.m. (*Id.* at 15.) Floyd-Brewer told Dalkin that Cedric had a gun on his pillow and that she took the gun, pointed it in Cedric's direction, and asked him if he knew what might happen if she pulled the trigger. (*Id.* at 16.) According to Dalkin, Floyd-Brewer then asked for an attorney and Dalkin terminated the interview. (*Id.*) Detective Joseph Struck claims that Floyd-Brewer later asked for water and indicated that she wanted to revise her statement. (*Id.*) After waiving her right to an attorney, Floyd-Brewer told Dalkin that she knew the gun was loaded and she pointed the gun at Cedric to teach him a lesson. (*Id.* at 17.) The trial court allowed Floyd-Brewer's statements, as well as evidence recovered from the search of her apartment, into evidence.

Floyd-Brewer appealed to the Appellate Court of Illinois, which affirmed the decision below on March 17, 2004. (*Id.*) Floyd-Brewer raised three issues on appeal: (1) the trial court erred in denying her motion to quash arrest and suppress physical evidence; (2) the trial court erred by allowing the prosecutor to introduce evidence of three out-of-court prior consistent statements made by a witness; and (3) the trial court denied her a fair trial by allowing a detective to give improper opinion testimony attacking the veracity of her exculpatory statement. Floyd-Brewer did not appeal to the Illinois Supreme Court. (Dkt. No. 1 at 2.)

In July 2006, Floyd-Brewer filed an unsuccessful petition for post-conviction relief in the Circuit Court of Cook County. (Dkt. No. 1 at 3.) Floyd-Brewer raised three issues in her petition:

(1) illegal arrest outside of Chicago's city limits by Chicago Police officers without probable cause or an arrest warrant; (2) denial of right to counsel during police questioning; and (3) police officers made her give a statement to them before they would allow her to leave the police station. The court summarily dismissed Floyd-Brewer's claims based on res judicata because Floyd-Brewer raised these same issues in her earlier motion to quash arrest and suppress physical evidence. She did not appeal. (*Id.*) Floyd-Brewer subsequently sought leave to file a second petition for post-conviction relief in 2009. (Dkt. No. 1 at 3(d).) The Circuit Court of Cook County denied Floyd-Brewer's petition and Floyd-Brewer appealed. (Dkt. No. 1 at 3(e).) After concluding that her claims were frivolous, Floyd-Brewer's appellate counsel sought leave to withdraw. (Ex. D to Dkt. No. 12 at 2.) The Appellate Court of Illinois granted Floyd-Brewer's counsel leave to withdraw and affirmed the lower court's denial Floyd-Brewer's petition. (*Id.*) Floyd-Brewer appealed to the Illinois Supreme Court, which denied her leave to file a second petition for post-conviction relief on September 26, 2012. (Ex. E to Dkt. No. 12.)

## **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs petitions for writs of habeas corpus filed after April 24, 1996. *Benefiel v. Davis*, 357 F.3d 655, 659 (7th Cir. 2004). Under the AEDPA, a federal district court may issue a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). For claims adjudicated on the merits in state court proceedings, the district court may issue a writ of habeas corpus only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the

4

evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *Cheeks v. Gaetz*, 571 F.3d 680, 684 (7th Cir. 2009). But a federal court cannot hold an evidentiary hearing on a habeas claim where the petitioner failed to develop the factual basis of her claim in state courts. *See Byers v. Basinger*, 610 F.3d 980, 987 (7th Cir. 2010). "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams v. Taylor*, 529 U.S. 420, 437 (2000).

A state prisoner has one year to file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The statutory period runs from the latest of: (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. *Id.* A properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment of claim, however, tolls the limitations period. 28 U.S.C. § 2244(d)(2); *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013).

## DISCUSSION

### I. All of the claims in Floyd-Brewer's petition are untimely.

The Illinois Appellate Court affirmed Floyd-Brewer's conviction on March 17, 2004. Floyd-Brewer's conviction became final on April 7, 2004, which is when the time to file a petition for leave to appeal with the Illinois Supreme Court expired. Floyd-Brewer did not file

her petition for writ of habeas corpus until more than nine years later. She did not file her first petition seeking post-conviction relief until July 2006. Consequently, statutory tolling does not apply because she did not file for state post-conviction or other collateral review before the statute of limitations for her petition for writ of habeas corpus expired on April 7, 2005. Therefore, absent a later start of the limitations period, Floyd-Brewer's claims are untimely.

None of the claims raised by Floyd-Brewer invoke a right newly recognized by the Supreme Court. Therefore, absent some other reason to delay the start of the limitations period, Floyd-Brewer's claims are untimely.

Floyd-Brewer does not identify a specific impediment that prevented her from filing a petition for writ of habeas corpus within one year of the Illinois Appellate Court's decision. Floyd-Brewer does complain that her state-appointed appellate counsel declined to appeal to the Illinois Supreme Court and that left her without any meaningful legal assistance. (*See* Dkt. No. 1 at 2(c).) But Floyd-Brewer did not have a right to counsel beyond her first direct appeal. *See Kitchen v. United States*, 227 F.3d 1014, 1018 (7th Cir. 2000) ("It is equally well established that a criminal defendant enjoys this right to counsel through his first appeal of right, but that, once that direct appeal has been decided, the right to counsel no longer applies.").

Floyd-Brewer also complains that "a woefully inadequate law library system within the female prison facilities" prevented her from appealing the dismissal of her first petition for post-conviction relief. Yet she does not claim this impediment existed prior to July 2006. According to Floyd-Brewer, she did not directly appeal her conviction to the Illinois Supreme Court in 2004 because her counsel abandoned her. Floyd-Brewer does not claim that she lacked access to legal materials in the months leading up to her first petition for post-conviction relief. It was during this time that she should have filed her petition for writ of habeas corpus. She did not and she has

not claimed that she lacked meaningful access to legal materials during this period. Therefore, absent a recently discovered factual predicate for her claims, Floyd-Brewer's claims are untimely.

Floyd-Brewer's fifth and sixth claims refer to what she characterizes as recently discovered factual predicates. Floyd-Brewer claims that deposition testimony from March 2013 revealed that the Chicago Police Department has a policy of non-compliance with subpoenas. According to Floyd-Brewer, she did not know about this policy during her trial and believes that the Chicago Police Department withheld files that would have been helpful to her case. Floyd-Brewer bases her claim on the deposition testimony given by Chicago Police Department Lieutenant Fred Melean on March 26, 2013. Lieutenant Melean was the administrative sergeant for the Records Inquiry Section from February 2005 to April 2010. (Ex. E to Dkt. 1 at 6:3-7.) Lieutenant Melean oversaw the process used by the Chicago Police Department to process incoming subpoenas. (*Id.* at 9:22-10:2.) Lieutenant Melean explained that a person working in Records Inquiry Section would "check, [was] supposed to check, and get the files for all subpoenas, no matter where it's supposed to be." (*Id.* at 33:16-23.) Lieutenant Melean explained that the subpoena unit would refer subpoenas seeking documents related to an open case to legal affairs to determine which documents his unit could release. (*Id.* at 19:3-20:12.) Lieutenant Melean declined to speculate as to what, if anything, legal affairs did once the subpoena unit referred an issue to legal affairs. (*Id.* at 29:23-30:7.) But nothing in the transcript from Lieutenant McLean's deposition suggests that the Chicago Police Department withheld any documents from Floyd-Brewer. In fact, Lieutenant Melean's testimony covers a period that begins nearly three years after a jury convicted Floyd-Brewer. Therefore, this "recent discovery" does not warrant a later start of the limitations period. Moreover, had she issued a subpoena to the Chicago Police

Department, Floyd-Brewer would have known at the time of her trial whether the Chicago Police Department responded to the subpoena. If it did not, then she could have raised the issue prior to trial. There is no reason that she could not have discovered the factual predicate for this claim sooner. Therefore, Floyd-Brewer's fifth claim is untimely.

Floyd-Brewer also claims that the state failed to disclose that one of the detectives who testified against her was dishonest. Floyd-Brewer bases her claim on Detective Paulnitsky's involvement with a false conviction. Floyd-Brewer references a newspaper article dated March 30, 2004, that she attached to her petition as Exhibit H. This article was publicly available and could have been discovered through due diligence in the months following its publication. As a result, any delay to the start of the limitations period based on this information would have been minimal and the limitations period would have run well before Floyd-Brewer filed her first post-conviction petition. Therefore, Floyd-Brewers sixth claim is untimely. The same is true for Floyd-Brewer's remaining claims, none of which refer to recently discovered factual predicates.

## II.     The doctrine of equitable tolling does not apply in this case.

A court may equitably toll the limitations period if a petitioner can show that she has pursued her rights diligently and that some extraordinary circumstance beyond her control stood in the way of a timely filing. *See Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006) ("Equitable tolling excuses an untimely filing when, despite exercising reasonable diligence, a petitioner could not have learned the information he needed in order to file on time."). Here, Floyd-Brewer has not shown that she diligently pursued her rights. She waited at least two years to file her first post-conviction petition and then waited another two-and-a-half years to file her second post-conviction petition. Neither her first nor second post-conviction petitions tolled the limitations period under the statute. And her delay does not support the application of equitable tolling.

Moreover, she has not identified any circumstances beyond her control that stood in the way of her filing a petition for writ of habeas corpus during the limitations period. Therefore, equitable tolling is not appropriate in this case.

### III. Floyd-Brewer has not presented any new evidence to support her claim of actual innocence.

Floyd-Brewer's actual innocence claim does not excuse her delay. A court may excuse a petitioner's delay to prevent a miscarriage of justice. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1935 (2013). A claim of actual innocence requires a petitioner to show that new evidence makes it more likely than not that no reasonable juror could find her guilty beyond a reasonable doubt. *Id.*; *see also Morales v. Johnson*, 659 F.3d 588, 605 (7th Cir. 2011). Here, Floyd-Brewer does not present any new evidence. Therefore, her actual innocence claim fails.

### IV. A certificate of appealability is not appropriate.

A petitioner may not appeal a final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court unless a court issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). "Only if the applicant has made a substantial showing of a constitutional right" can a court issue the certificate of appealability. 28 U.S.C. § 2253(c)(2). "If success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal." *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003). Here, there is no dispute as to whether Floyd-Brewer filed her petition within one year of the date the time for seeking direct review of her conviction. She did not. Therefore, Floyd-Brewer cannot make a substantial argument that

this Court erred by dismissing her petition on procedural grounds. Accordingly, this Court will not issue a certificate of appealability.

## **CONCLUSION**

For the reasons stated herein, this Court grants the Respondent's motion to dismiss Floyd-Brewer's petition for writ of habeas corpus as untimely.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: November 26, 2013